# Town of Portsmouth

Post Office Box 207 / Portsmouth, Rhode Island 02871

Board of Review 401-683-3611


**Petition of Nextel Communications**
**Owner: Narragansett Electric Co.**
**Massasoit Avenue**
**Map 9, Lots 3A, 3B and 3C**
**Zoned: R – 10**

## DECISION

This matter came on to be heard before the Portsmouth Board of Review on April 20 and May 18, 2006, on petitioner's application for a special use permit under Article VII, Section E to allow construction of a wireless communications monopole together with an ancillary equipment shelter. Petitioner was represented by Ricardo Sousa, Esquire, legal counsel for Nextel Communicatins. Members participating were Chairman James E. Nott, Vice Chairman Kevin M. Aguiar, Kenneth A. James, Jr., Michael Lyga and Byron J. Hall.

On April 20, 2006, Mr. Sousa explained the company's obligation under its FCC license to provide coverage and that there were certain gaps in coverage in the vicinity of the Sakonnet River Bridge and on Route 24 in Tiverton. Petitioner proposed to correct the coverage gaps by constructing a 102' steel monopole on property owned by Narragansett Electric, which would replace an existing 81' wooden electric transmission pole. There would be a 10' high canister on top of the pole that would house 6 antennas. There would also be a shelter constructed to house equipment in a fenced-in compound near the base of the pole.

Mr. Sousa stated that the proposal satisfied the requirement of the ordinance, that a tower must have a free fall radius of 125% of its height which shall be clear of any structures designed for residential use or commercial/industrial occupancy. Chariman Nott questioned the accuracy of this statement, and noted surrounding properties where structures could be built within the free fall radius. Mr. Sousa stated that the free fall radius requirement only applies to actual, existing structures, and not potential structures that could be built on surrounding properties. He stated that petitioner cannot anticipate where a house might be built on an abutting vacant lot. Mr. Nott responded that potential structures can be anticipated by referring to the setback requirements of the ordinance and showing the buildable area of the surrounding lots on the plan.

Phillip Leite testified that he was a radio frequency engineer for Nextel Communications and summarized his background and experience. The Board voted unanimously to accept Mr. Leite as an expert witness in the field of radio frequency engineering. Mr. Leite explained the nature of the gaps in coverage and problems with

interference in the area, and how the proposed tower would correct the problems. Mr. Leite testified as to other sites that had been investigated and considered, but that no other site was sufficient to meet petitioner's objective of resolving the gaps in coverage as well as interference. Mr. Sousa introduced as Exhibit 1 a list of the alternative sites considered. In response to a question from Mr. Aguiar, Mr. Sousa stated that it could be possible to meet petitioner's objectives by installing antennas at lower elevations in additional locations. Mr. Sousa noted that it would be rare for a town to want multiple, shorter poles rather than a single, higher pole.

Chairman Nott noted that there was no technical information supplied on a diesel generator as referenced on the plans, and that there was no engineering data concerning the design and construction of the pole itself. Mr. Sousa stated that petitioner could provide the requested data and a geotechnical study, and he requested the hearing be continued to allow him an opportunity to obtain the information. The Board voted unanimously to continue the hearing to May 18, 2006.

When the hearing resumed on May 18, 2006, Mr. Sousa submitted an additional plan showing the 125% free fall radius and what properties would be impacted. Mr. Sousa stated that petitioner would eliminate the proposed generator from the plans if there any environmental or noise concerns, although he noted that the sound of the generator was no more that 70 decibles at a distance of 23 feet. Mr. Sousa also submitted photographs of other installations. Mr. Sousa stated that the geotechnical study he had promised at the previous hearing had not been completed, and could not be submitted at this time. In addition, no structural data concerning the pole would be available or released until after the geotechnical study is done. Mr. Sousa stated that petitioner had no further witnesses or information to present to the Board.

The Board then heard from abutters and interested parties. Carol Mello, 158 Massosoit Ave, stated that there was no survey stamp on the plans. She stated that the pole would be too close to existing houses to the south and to a house being built to the north. The geotechnical study promised by petitioner had not been submitted, and there were too many unanswered questions to allow the proposal to be approved. She stated the proposal was not appropriate for an R-10 residential area. Ms. Mello also submitted a letter explaining her opposition to the petition. Eric Johnson, 5 Narragansett Blvd., stated that the pole would be an eyesore and that the gaps in coverage on the Sakonnet Bridge did not justify the proposal. Nancy Aguiar, 130 King Philip St. (no relation to Vice Chairman Aguiar) stated that she was under contract to buy an adjacent empty lot. She stated there is an existing garage on the lot that is within the fall zone. Any house will have to be located on the east side of the lot. She stated that a septic system application has been filed with the DEM and that her house will be built as soon as the septic system is approved. The house will have to be located in the 125% fall zone. Joseph Scutti, 3 Narragansett Blvd., stated that he owns the lot being sold to the Aguiars. He stated that there is a garage on the property that is within the fall zone. David Gleason, 63 Massasoit Ave., stated the proposal does not belong in a residential neighborhood. He noted that there will be additional traffic during construction and for maintenance personnel on the site. The coverage problem is primarily in Tiverton and the proposal

offers no benefit to the Town of Portsmouth. Mil Kinsella, 74 Narragansett Blvd., stated that she agreed with other comments in opposition to the proposal, and suggested that other alternative sites should be explored. A letter was submitted by Sharon Rust and Matthew Bottone, 1 Bliss Rd., Newport, RI, who stated that there was insufficient information presented on the potential environmental impact of the proposal.

After the public input was completed, Mr. Sousa requested to present additional testimony from Eric Dahl, a site acquisition engineer for Nextel, who would testify concerning attempts to locate alternative space in Tiverton. Chairman Nott denied his request, and the Board voted unanimously to close the hearing.

The Board considered the proposal and the information and documentation presented, and found that petitioner did not satisfy the criteria for the granting of a special use permit. The majority of the evidence showed that petitioner will save itself some costs and inconvenience by locating the pole within the existing utility easement; however, the proposed location directly abuts a residential neighborhood. Petitioner has not demonstrated that the proposal would comply with the 125% free fall radius restriction of Article VII, Section E (3) of the Zoning Ordinance. There is an abutter with plans to build a residence on a lot within the free fall zone in the near future. There is also an existing house located on Map 10, Lot 26, which appears to be 129' away from the proposed pole. Petitioner has not submitted a stamped, registered survey that would clearly define the free fall zone. Petitioner also has failed to submit a geotechnical study, and has failed to produce technical data concerning the design and construction of the pole.

The Board determined that petitioner failed to meet its burden of proof for the granting of a special use permit. Petitioner failed to demonstrate that its proposal would not be detrimental to the surrounding area, that it would be compatible with neighboring land uses, that it would not constitute a nuisance or a hazard, that it would provide safe vehicular access and adequate parking, that adequate protection has been afforded surrounding properties by the use of open space and planting, that solar rights of abutters will not be impacted, that no undue noise, smoke, odor, lighting and other objectionable features would result, that it complies with the purpose and intent of the Comprehensive Community Plan and the Zoning Ordinance, and that the health, safety and welfare of the community are protected.

Accordingly, the Board voted unanimously to deny petitioner's application for a special use permit under Article VII, Section E to allow construction of a wireless communications monopole and ancillary equipment shelter.

**Portsmouth Board of Review**
**By:** James E. Edwards
**James E. Edwards**
**Secretary**

Dated: 6/15/06